UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**JOANN JOHNSON COURCELLE**   **CIVIL ACTION**

**VERSUS**   **NO: 20-2920**

**KILOLO KIJAKAZI,**   **SECTION "M" (3)**
**COMMISSIONER OF SOCIAL SECURITY**

**REPORT AND RECOMMENDATION**

Plaintiff Joann Johnson Courcelle brings this action pursuant to § 205(g) of the Social Security Act ("the Act"), 42 U.S.C. §405(g), for judicial review of the final decision of the Commissioner denying her claim for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 423, *et seq*. The matter has been fully briefed on cross-motions for summary judgment. The issues are thus ripe for review. For the following reason, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, the Commissioner's cross-motion be **GRANTED**, and Plaintiff's case be **DISMISSED WITH PREJUDICE**.

I.     BACKGROUND

Plaintiff filed her application for DIB on December 13, 2017, alleging a disability onset date of July 1, 2014. (Rec. Doc. No. 21-1, p. 3). Plaintiff alleged disability due to Chronic Inflammatory Response Syndrome (CIRS) and Chronic Fatigue Syndrome (CFS). *Id*. The Social Security Commissioner denied the claim administratively on May 3, 2018. *Id*. Plaintiff requested a hearing, and two hearings were held, one on April 29, 2019, and one on November 20, 2019, in front of an administrative law judge ("ALJ"). At both hearings, Plaintiff, represented by an attorney, appeared and testified. (Rec. Doc. No. 22-1, p. 2). A vocational expert also testified. *Id*. The ALJ issued a decision denying the claim on January 9, 2020. (Rec. Doc. No. 14-2, p. 27). At

1

the time of the ALJ's decision, Plaintiff was forty-four years old with a college education and past relevant work experience as an attorney. (Rec. Doc. No. 22-1, p. 2).

The ALJ applied the five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v).[1] In relevant part, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since July 1, 2014, the alleged onset date. (Rec. Doc. No. 14-2, p. 15). The ALJ determined that Plaintiff had the following severe impairments: chronic inflammatory response syndrome, chronic fatigue syndrome, intestinal disorder, not otherwise specified, somatic system disorder, hypothyroidism, headaches, and cognitive disorder, not otherwise specified. *Id*. Next, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments to qualify for presumptive disability. *Id*. at 16. The ALJ then concluded that the Plaintiff had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a), except that she can only occasionally kneel, stoop, crouch, or crawl; never climb; frequently handle and feel bilaterally; frequently reach overhead bilaterally; can never be exposed to concentrated exposure of pulmonary irritants such as gases or fumes; and would require a sit/stand option where she would need to stand for ten minutes each hour with no break in the work process. *Id*. at 19. The ALJ further determined Plaintiff could perform unskilled work as defined in the Dictionary of Occupational Titles (DOT) with few, if any, changes in a routine work setting. *Id*. The ALJ concluded that Plaintiff is unable to perform any past relevant work. *Id*. at 25. Finally, with the assistance of the vocational expert, the ALJ concluded that considering the Plaintiff's age, education, work experience, and RFC, jobs exist in significant numbers in the national economy that Plaintiff is capable of performing. *Id*. at 26. Thus,

---

[1] *See also* Section III. Entitlement to Benefits Under the Act, *infra* pp. 4-5.

the ALJ determined the Plaintiff was not disabled as defined in the Act.

The Appeals Council denied the request for review on August 25, 2020, making the ALJ's decision the final decision of the Commissioner for judicial review. (Rec. Doc. No. 22-1, p. 3).

## II.     STANDARD OF REVIEW

The function of a district court on judicial review is limited to determining whether there is "substantial evidence" in the record, as a whole, to support the final decision of the Commissioner as trier of fact, and whether the Commissioner applied the appropriate legal standards to evaluate the evidence. *See* 42 U.S.C. § 405(g); *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir.1999); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir.1995); *Carriere v. Sullivan*, 944 F.2d 243, 245 (5th Cir.1991). If the Commissioner's findings are supported by substantial evidence, this Court must affirm them. *Martinez*, 64 F.3d at 173.

Substantial evidence is that which is relevant and sufficient for a reasonable mind to accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401(1971); *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002). It is more than a scintilla but may be less than a preponderance. *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir.1993). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. *See Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2002).

A district court may not try the issues *de novo*, re-weigh the evidence, or substitute its own judgment for that of the Commissioner. *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir.1995); *Spellman*, 1 F.3d at 360. The Commissioner is entitled to make any finding that is supported by substantial evidence, regardless of whether other conclusions are also permissible. *See Arkansas v. Oklahoma*, 503 U.S. 91, 112-13 (1992). Conflicts in the evidence are for the Commissioner to resolve, not the courts. *Carey*, 230 F.3d at

135. Any of the Commissioner's findings of fact that are supported by substantial evidence are conclusive. *Ripley*, 67 F.3d at 555. Despite this Court's limited function on review, the Court must scrutinize the record in its entirety to determine the reasonableness of the decision reached and whether substantial evidence existed to support it. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir.1992); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir.1990).

### III.  ENTITLEMENT TO BENEFITS UNDER THE ACT

To be considered disabled and eligible for disability benefits under the Act, plaintiff must show an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered disabled only if a physical or mental impairment is so severe that the claimant is unable to do not only his previous work, but cannot, considering age, education and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she or he applied for work. 42 U.S.C. § 1382(a)(3)(B). The Commissioner has promulgated regulations that provide procedures for evaluating a claim and determining disability. 20 C.F.R. §§ 404.1501 - 404.1599 & Appendices, §§ 416.901t-416.988 (1995). The regulations include a five-step evaluation process for determining whether an impairment prevents a person from engaging in any substantial gainful activity. *Id*. §§ 404.1520, 416.920; *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.1994).

In *Shave v. Apfel*, 238 F.3d 592 (5th Cir. 2001), the Fifth Circuit restated the five-step procedure to make a disability determination under the Social Security Act:

> The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." To determine whether a claimant is disabled, and thus entitled to disability benefits, a five-step analysis is employed. First, the claimant must not be presently working at any substantial gainful activity. Second, the claimant must have an impairment or combination of impairments that are severe. An impairment or combination of impairments is "severe" if it "significantly limits [a claimant's] physical or mental ability to do basic work activities." Third, the claimant's impairment must meet or equal an impairment listed in the appendix to the regulations. Fourth, the impairment must prevent the claimant from returning to his past relevant work. Fifth, the impairment must prevent the claimant from doing any relevant work, considering the claimant's residual functional capacity, age, education and past work experience. At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant acquits this responsibility, at step five the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. If the Commissioner meets this burden, the claimant must then prove he in fact cannot perform the alternate work.

*Shave*, 238 F.3d at 594 (quoting *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999)). If the ALJ determines that a plaintiff is not disabled under Step V of the five-part test, the ALJ must establish that the claimant has a "residual functional capacity," given the claimant's age, education, and past work experience, to perform other work available in the national economy. *Leggett v. Chater*, 67 F.3d 558, 564 n.11 (5th Cir. 1995). Step V also requires the Commissioner to use the medical-vocational guidelines to make a disability determination. *Id.*

The four elements of proof weighed to determine whether evidence of disability is substantial are: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995). "The Commissioner, rather than the courts, must resolve conflicts in the evidence." *Id.*

### IV. ISSUES ON APPEAL

Plaintiff raises the following two issues on appeal:

5

    (1) Whether the ALJ erred in evaluating Listing 14.07(C).

    (2) Whether the ALJ properly evaluated the opinion evidence of record so that the RFC is supported by substantial evidence.

## V. ANALYSIS

### 1. Whether the ALJ erred in evaluating Listing 14.07(C)

Plaintiff contends that the ALJ erred in evaluating Listing 14.07(C) because Plaintiff meets the Listing and should therefore be found disabled. (Rec. Doc. No. 21-1, p. 5). Plaintiff argues that the ALJ's finding that her limitations did not meet a marked level is incorrect. Plaintiff further argues that testing supports CIRS, and fatigue, malaise, and cognitive limitations do not tend to show up on objective examinations. Consequently, subjective complaints in a case like this are an essential diagnostic tool. *Id*. at 6. Further, Plaintiff contends that the record shows direct objective evidence of marked limitations and cites to numerous tests performed by various medical professionals that provide evidence of CIRS, fatigue, and malaise. *Id*. at pp. 6-8. Finally, Plaintiff contends that the record supports marked limitations in daily living and in concentration, persistence, and pace. *Id*. at 8. The Plaintiff concludes by stating that the Listing analysis was incorrect and that the overwhelming evidence supports a directed finding of disability and calculation of benefits. *Id*. at 9.

The Commissioner contends that the ALJ properly found Plaintiff did not meet or equal listing 14.07 because Plaintiff failed to meet her burden of establishing that she was presumptively disabled. (Rec. Doc. No. 22-1, p. 5). The Commissioner concedes that, at times, Plaintiff had some of the medical criteria in Listing 14.07, but that she failed to prove that her impairment met or equaled *all* of the criteria in the listing, particularly for a consecutive twelve-month period. *Id*. at 6. While Plaintiff "selectively" cites evidence suggesting her impairment meets the criteria, the

Commissioner maintains that other evidence in the record shows that her impairment did not meet the criteria for Listing 14.07 because Plaintiff failed to show that her limitations reached the marked level required by section C of Listing 14.07. *Id*.

To meet a listing in Appendix 1, an impairment "must meet *all* of the specified medical criteria" of the particular listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (19920) (emphasis in original). A claimant who fails to meet the stated criteria by even a slight margin fails to qualify for presumptive disability under the listings. *See id*. ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify."). Furthermore, the impairments must meet the severity level of the listing for a continuous period of twelve months. *See* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 404.1509, 404.1520(a)(4)(iii), (d), 404.1525(a), 404.1626(a), 416.905(a); *Barnhart v. Walton*, 535 U.S. 212, 217-18 (2002).

Listing 14.07(C) relates to immune deficiency disorders, excluding HIV infections. (Rec. Doc. No. 14-2, p. 16). Subsection "C" covers repeated manifestations of an immune deficiency disorder, with at least two of the constitutional symptoms or signs, like severe fatigue, fever, malaise, or involuntary weight loss, and one of the following at the marked level: limitation of activities of daily living, limitation in maintaining social function, or limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, and pace. *Id*. A marked limitation is a "seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis." *Id*.

The ALJ directly addressed Listing 14.07(C) in the opinion, noting that Plaintiff argued that the evidenced showed the CIRS condition met the listing. (Rec. Doc. No. 14-2, p. 16). However, the ALJ found that the objective evidence showed the limitations did not reach the marked level. *Id*. The ALJ noted that while "numerous physicians of record appear to consistently

7

rely on the claimant's subjective complaints, the actual objective evidence shows she is functioning significantly better than alleged." *Id*. The ALJ noted that the Plaintiff was able to "drive, shop, prepare meals, and attend her daughter's softball games." *Id*. The ALJ stated that although Plaintiff testified to having "bad days" with diminished daily activities, the burden was on the Plaintiff to show objective evidence that proves the frequency and severity of those "bad days" and that all competitive work was precluded. *Id*. Finally, the ALJ stated that the evidence of record, discussed in detail throughout the opinion, does not indicate that the impairments and resulting symptoms precluded all work. *Id*.

Additionally, the ALJ considered Plaintiff's ability to understand, remember, and apply information, finding that she had a moderate limitation, and noting that Plaintiff "can regularly drive an automobile, which indicates she is able to remember and apply the rules of the road, understand the signs and traffic control devices, and navigate streets and highways." (Rec. Doc. No. 14-2, p. 17). The ALJ noted that Plaintiff claimed to suffer from a loss of "executive function" but nevertheless paid bills and was able to count change. *Id*. The ALJ determined that Plaintiff had a mild limitation in interacting with others, finding that she spent time with others in person, got together with friends a few times a month, regularly shopped in stores, and attended her daughter's softball games. *Id*. The ALJ noted that Plaintiff "specifically reported she did not have any problem getting along with family, friends, neighbors or others." *Id*. Regarding concentrating, persisting, or maintaining pace, the ALJ stated that the claimant had a moderate limitation, finding that Plaintiff testified that on a typical day she drove her kids to school, played word games, and read a book. *Id*. None of the limitations identified by the ALJ reached the marked level necessary to qualify for a listing. Thus, the ALJ analyzed listing 14.07(C) and determined Plaintiff was not presumptively disabled.

"A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000). Ultimately, this Court will not "re-weigh the evidence or substitute our judgment for that of the Commissioner." *Boyd*, 239 F.3d at 704 (internal quotation marks and citation omitted). Here, substantial evidence supports the ALJ's decision that Plaintiff's limitations were less than marked, and therefore, the ALJ did not err in concluding the Plaintiff failed to meet Listing 14.07 for presumptive disability.

2. **Whether the ALJ properly evaluated the opinion evidence of record so that the RFC is supported by substantial evidence.**

Plaintiff contends that the RFC is not supported by substantial evidence because the ALJ failed to properly evaluate the opinion evidence of record. (Rec. Doc. No. 21-1, p. 9). Specifically, Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ allegedly failed to weigh the opinion from Dr. Cuccia, and improperly evaluated the opinions from Dr. McMahon and Dr. Snell. *Id*. at 10. Specifically, Plaintiff contends that the failure to weigh the opinion of Dr. Cuccia requires remand, particularly under the new regulations provided by the Social Security Administration ("SSA") to evaluate medical opinion evidence. *Id*. at 10-11. Further, Plaintiff contends that the opinion of Dr. Cuccia indicates that Plaintiff has limitations in completing tasks in a timely manner due to deficiencies at concentration and pace, however, the mental portion of the RFC determined by the ALJ has no limitations in concentration, persistence, or pace, and thus, the failure to weigh this opinion was harmful. *Id*. at 11.

Plaintiff also argues that the ALJ incorrectly evaluated the medical opinion evidence of Dr. McMahon and Dr. Snell. Regarding Dr. McMahon, Plaintiff argues that the ALJ's analysis of his opinion was based on incorrect speculation that his medical findings were based on subjective

9

complaints rather than objective testing, which allegedly reveals cognitive difficulties. *Id*. Plaintiff contends that there is significant objective evidence to support the mental limitations opined by Dr. McMahon, and that his own notes and treatment is consistent with the rest of the record. *Id*. at 12. Regarding Dr. Snell, Plaintiff argues that the ALJ improperly rejected this opinion that even a sedentary job would require more energy than Plaintiff can maintain because Dr. Snell's opinion was highly supported by cardiopulmonary exercise testing ("CPET"). *Id*. at 13.

The Commissioner contends that the ALJ properly evaluated the opinion evidence, finding the Plaintiff had an RFC to perform sedentary work, with limitations, or unskilled work. (Rec. Doc. No. 22-1, p. 9-10). The Commissioner argues that the ALJ in fact addressed the opinion evidence of Dr. Cuccia, opining that she was disabled or unable to work, and assigned the opinion no probative value because the determination of whether an individual is disabled is reserved for the Commissioner. *Id*. at 11. Further, the Commissioner maintains that the ALJ properly evaluated the opinion of Dr. Snell, noting other evidence that supported her determination that the opinion was unpersuasive. *Id*. Finally, the Commissioner argues that the ALJ properly evaluated the opinion of Dr. McMahon, noting that his opinion was inconsistent with Plaintiff's reported activities of daily living, as well as lacking the support of objective medical findings. *Id*. at 12.

At the outset, the Court notes that the regulations provide that for claims filed on March 27, 2017, or later, the agency "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's own] medical sources. 20 C.F.R. §§ 404.1520c(a), 416.920c(a) (2017); *Winston v. Berryhill*, 755 Fed. Appx. 395, 402 n. 4 (5th Cir. 2018). Here, Plaintiff filed her application on December 13, 2017.

These regulations no longer mandate particularized procedures in consideration of opinions from treating sources. Rather, the ALJ should use the following five factors to determine the persuasiveness of the medical opinions or prior administrative medical findings: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and the examining relationship; (4) specialization; and (5) other factors. 20 C.F.R. §§404.1520(a)-(c), 416.920c(a)-(c) (2017); *Liguez v. Kijakazi*, 2021 WL 4943321 at *6 (N.D. Tex. Aug. 11, 2021).

The two most important factors in determining the persuasiveness of a medical opinion or prior administrative medical finding are supportability and consistency, and the ALJ must explain how he considered those factors. *Id*. The ALJ may, but is generally not required to, explain how he considered the remaining factors, unless there is also a determination that two or more medical opinions or prior administrative medical findings concerning the same issue are equally well-supported and consistent with the record, but not identical. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3) (2017). Additionally, the ALJ will consider one or more medical opinions or prior administrative medical findings from the same medical source using the above factors and is not required to articulate how he considered each opinion or finding. *Id*. §§ 404.1520c(b)(1), 404.1520c(b)(1) (2017).

Plaintiff first argues that the ALJ failed to weigh the opinion of Dr. Cuccia. The Court disagrees. Although the ALJ is not required to articulate how he or she considered each and every medical opinion contained in a medical source statement from a given medical provider, the ALJ must still provide some explanation for rejecting a medical opinion of record. *See Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000); *see also Price v. Astrue*, 401 Fed. App'x 985, 987 (5th Cir. 2010) (per curiam) (Although the ALJ does not need to comment on every piece of evidence, he

11

must still "build an accurate and logical bridge between the evidence and the final determination."). Here, the ALJ does so regarding the opinion of Dr. Cuccia. The ALJ first mentions Dr. Cuccia in summarizing his findings from a physical examination in which Plaintiff was revealed to have normal respiration, normal cardiovascular function, non-tender bloating in the lower abdomen, and no clubbing cyanosis or edema. (Rec. Doc. No. 14-2, p. 23). The physical examination also revealed that cranial nerves were intact and that in May of 2019, the Plaintiff reported she was doing okay and that her VIP nasal spray had helped her. *Id*. She also reported that her stamina was better and was only limited when she was doing a lot of activities. *Id*. In arguing that the ALJ failed to weigh the opinion of Dr. Cuccia, Plaintiff references Dr. Cuccia's statement that she had limitations in completing tasks in a timely manner due to deficiencies in concentration and pace. (Rec. Doc. No. 21-1, p. 11). However, this is not an opinion statement, but Dr. Cuccia referencing and agreeing with the findings of Dr. McMahon.

Additionally, although he is not explicitly named, the ALJ went on to evaluate numerous medical opinions, and stated, "Notably, several of the claimant's physicians opined the claimant was disabled or unable to work (Exhibit B27F, Pg. 77, B47F). However, the finding of disability and/or inability to work is reserved to the Commissioner of Social Security. Thus, these opinions have no probative value for purposes of the disability determination herein." *Id*. at 25. Significant to this analysis, exhibit B47F is a reference to the medical opinion of Dr. Cuccia. It was proper for the ALJ to assign this type of opinion no probative value, as opinions on whether an individual is disabled or unable to work are reserved to the Commissioner, and therefore cannot be given special significance. *See Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003) (Among the opinions by treating doctors that have no special significance are determinations that an applicant is "disabled" or "unable to work." These determinations are legal conclusions that the regulations describe as

"reserved to the Commissioner."). Thus, the ALJ did not err in evaluating these conclusory statements. Furthermore, the Fifth Circuit has long held that, "[t]he ALJ is free to reject the opinion of any physician where the evidence supports a contrary conclusion." *Hollinger v. Kijakazii*, 857 Fed.Appx. 213, 214 (5th Cir. 2021) (quoting *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995)).

Regarding Dr. McMahon, the ALJ went into great detail, beginning with his initial physical examination of the claimant in June 2017, three years after her alleged onset date. The ALJ noted that in August 2017, Dr. McMahon noted that "after the claimant left the building and was no longer exposed to mold for over three years, 'she got 90% better' and 'twenty-two of her 28 symptoms resolved and the rest were all improved.'" (Rec. Doc. No. 14-2, p. 22). In Dr. McMahon's mental residual functional capacity assessment, he found that Plaintiff had marked limitations in the ability to understand and remember and carryout detailed instructions, the ability to maintain attention and concentration for extended periods, in the ability to sustain an ordinary routine without special supervision, in the ability to work in proximity to others without being distracted, and in the ability to complete a normal workday and workweek without interruption from psychologically based symptoms. *Id*. However, the ALJ "[found] this opinion is inconsistent with the claimant's reported activities of daily living and is not supported by any actual objective medial findings. Based on the evidence, it appears that Dr. McMahon based his assessment of the claimant's mental functioning mainly upon her subjective complaints." *Id*. at 22-23. The ALJ referenced the mental limitations she evaluated previously in her opinion, noting that the evidence supports at most moderate limitations, not marked, and therefore, finding the mental assessment of Dr. McMahon not persuasive. *Id*. at 23. Subjective complaints must be corroborated by objective medical evidence, *Chambliss*, 269 F.3d at 522, thus, the ALJ was not convinced by Dr. McMahon's mental RFC determination. "Further, [Dr. McMahon's] finding that the claimant is

unable to perform her past work of a high-level attorney, while consistent with the record, is an issue reserved to the Commissioner of Social Security." (Rec. Doc. No. 14-2, p. 23). As to Dr. McMahon's physical functional assessment, the ALJ found it "partially persuasive to the extent it is consistent with a sedentary residual functional capacity and occasional postural movements, except the claimant can never climb." *Id*. On balance, the ALJ found the opinion of Dr. McMahon partially persuasive. Importantly, it is appropriate for the ALJ to "consider the claimant's daily activities when deciding the claimant's disability status." *Leggett v. Chater*, 67 F.3d 558, 565 n. 12 (5th Cir. 1995).

Regarding Dr. Snell, who opined that even a sedentary job would require more energy than the Plaintiff is able to safely sustain, the ALJ found the opinion "not persuasive." (Rec. Doc. No. 14-2, p. 25). The ALJ stated that "The evidence of record shows that over the course of the adjudication period, the claimant had participated in various activities, including walking her dog, going to sporting events and driving. She has not undergone any type of orthopedic treatment and has no problems ambulating or history of falls. Thus, the evidence as a whole supports the finding that the claimant could perform a modified range of unskilled sedentary work" as set forth in the RFC. *Id*. Again, "[i]t is appropriate for the Court to consider the claimant's daily activities when deciding the claimant's disability status." *Leggett v. Chater*, 67 F.3d at 565 n. 12. Thus, the evidence as a whole, discussed throughout the ALJ's opinion, did not support the degree of limitation assessed by Dr. Snell.

Conflicts in the evidence, including those arising from medical opinions, are to be resolved by the Commissioner, not the courts. *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987). It is not this Court's place to substitute its judgment for that of the Commissioner. *See Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) (per curiam). An ALJ's RFC determination is entitled to

considerable deference. *Wren v. Sullivan*, 925 F.2d 123, 128 (5th Cir. 1991). Here, the ALJ properly evaluated the medical opinion evidence, and the determined RFC is supported by substantial evidence.

I. **CONCLUSION**

Accordingly,

**IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, the Commissioner's cross-motion be **GRANTED**, and Plaintiff's case be **DISMISSED WITH PREJUDICE.**

### NOTICE OF RIGHT TO OBJECT

Objections must be: (1) specific, (2) in writing, and (3) served within fourteen (14) days after being served with a copy of this report. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 1(a), 6(b) and 72(b). A party's failure to object bars that party from: (1) entitlement to *de novo* review by a district judge; and (2) appellate review of the un-objected-to factual findings and legal conclusions accepted by the district court, except upon grounds of plain error. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this 3rd day of June, 2022.

_____
**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**